UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SAUR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:24-cv-00264-HBK<br><br>ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 14, 18) |

Adam Saur ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 14, 18). For the reasons set forth more fully below, the Court affirms the Commissioner's decision.

## I.   JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on August 27, 2021, alleging a disability onset date of October 1, 2017.  (AR 300-01,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 10).

1 316-25). Benefits were denied initially (AR 81-110, 154-59) and upon reconsideration (AR 111-
2 48, 161-72).  Plaintiff appeared for a telephonic hearing before an administrative law judge
3 ("ALJ") on February 24, 2023.  (AR 42-80).  Plaintiff testified at the hearing and was represented
4 by counsel.  (*Id.*).  The ALJ denied benefits (AR 14-37) and the Appeals Council denied review
5 (AR 1-6).  The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

7 The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's
8 decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are
9 summarized here.

10 Plaintiff was 25 years old at the time of the hearing.  (AR 53).  He has some college
11 education.  (AR 53).  He lives with his mother.  (AR 53).  He has no past relevant work.  (AR 54).
12 Plaintiff testified he could not attend college classes due to pain.  (AR 54).  Plaintiff was
13 diagnosed with ankylosing spondylitis at age ten.  (AR 55-56).  He testified that due to
14 rheumatoid arthritis he takes 3-5 hours to get moving in the morning because of soreness and
15 pain, he can stand for maybe 10-20 minutes before he must sit down, he can walk for 10-15
16 minutes before he must sit down, he can sit for 10-15 minutes before he must change positions,
17 and he cannot carry any amount of weight on a regular basis.  (AR 55-58).  Plaintiff reported he
18 feels the most pain in his lower back, knees, feet, and hands.  (AR 60-61).  He has trouble
19 sleeping and does not socialize with friends or family.  (AR 68).  Plaintiff testified that he has
20 difficulty bending down or picking up things from the ground, cannot get out of bed in the winter
21 months for 50-70 percent of the month, and has difficulty with focus and concentration due to
22 pain.  (AR 70-71).

## III.   STANDARD OF REVIEW

24 A district court's review of a final decision of the Commissioner of Social Security is
25 governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the
26 Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or
27 is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial
28 evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support

a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**IV.    SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b),

3

416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date. (AR 20). At step two, the ALJ found that Plaintiff has the following severe impairments: ankylosing spondylitis, bilateral pes planus and valgus heel deformity, bilateral femoral acetabular impingement, and myofascial pain syndrome. (AR 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 22). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently handle and finger with the bilateral upper extremities; avoid concentrated exposure to extreme cold temperatures; and avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

(AR 22). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 30). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cashier II, sales attendant, and routing clerk. (AR 31). On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of the decision. (AR 32).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred in considering whether Plaintiff's impairment of ankylosing spondylitis met or medically equaled a listing at step three; and
2. Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 14 at 20-29).

## VII. DISCUSSION

**A. Step Three**

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the listings. *See* 20 C.F.R. § 416.920(d). The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925. An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 416.926(b). "Medical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings are present

equal in severity to all of the criteria for the one most similar listed impairment. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 416.926(b). "But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing." *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020). The claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, at step three, the ALJ considered the severity of Plaintiff's claimed impairments, singly and in combination, and found they do not meet or medically equal the criteria of listings 1.15, 1.18, and 14.09. (AR 22). Relevant here, the ALJ specifically found Plaintiff did not meet listing 14.09, inflammatory arthritis, "as there is no documented need for a hand-held assistive device, no inability to use both upper extremities, no constitutional signs such as severe fatigue, fever, malaise, or involuntary weight loss, no fixation on dorsolumbar or cervical spine on diagnostic imaging, and no manifestations of inflammatory arthritis. (*Id*. (citing AR 742-45)). The relevant requirements for Plaintiff's severe impairment of ankylosing spondylitis to meet listing 14.09 are as follows:

> C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
>
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.
>
> Or
>
> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

          1. Limitation of activities of daily living.

          2. Limitation in maintaining social functioning.

          3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(C)-(D).

     As an initial matter, Plaintiff fails to make any specific argument that the ALJ failed to properly consider ankylosing spondylitis under listing 14.09C. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief). Rather, Plaintiff generally argues the ALJ's reasoning at step three relevant to 14.09D is "lacking and flawed" because the record is "replete" with constitutional signs, and the ALJ failed to discuss Plaintiff's "manifestations of inflammatory arthritis." (Doc. No. 14 at 23-24). In support of this argument, Plaintiff cites six treatment notes documenting weight loss, with four of those notations dated before the alleged onset date of disability; two notations of reported fatigue; and multiple reports by Plaintiff of pain and stiffness as evidence of "malaise."[2] (AR 442, 445, 485, 487, 489-91, 540-42, 579, 582, 588, 809). Plaintiff also generally cites a handful of treatment notes identifying diagnoses of "valgus deformity" of both ankles, "bilateral pes plano valgus foot deformities," and management of "femoral acetabular impingement" as evidence of "manifestations of inflammatory arthritis." (AR 548, 580).

     While the ALJ may have overstated that the record contained "no" constitutional signs, Plaintiff nonetheless does not meet the burden of establishing his ankylosing spondylitis meets or equals the criteria of 14.09D. *See Ford*, 950 F.3d at 1157 (ALJ's "factual error" in listing analysis was harmless because there was "ample evidence" in the record supporting the ALJ's conclusion that all of the listing criteria were not met). First, Plaintiff must establish "*repeated manifestations of inflammatory arthritis*" along with two of the constitutional symptoms or

---

[2] Malaise is defined in the regulations as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §14.00(C)(2).

8

signs." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D). According to the regulations, the term "repeated" means

> the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks. [The] impairment will satisfy this criterion regardless of whether you have the same kind of manifestation repeatedly, all different manifestations, or any other combination of manifestations; for example, two of the same kind of manifestation and a different one. [The claimant] must have the required number of manifestations with the frequency and duration required in this section. Also, the manifestations must occur within the period covered by [the] claim.

*Id*. at § 14.00(I)(3). Here, Plaintiff generally argues, without citation to the medical record or legal authority, that the ALJ failed to "mention or discuss" evidence of deformity of his heel, deformity of both ankles, and referral for management of femoral acetabular impingement. (Doc. No. 14 at 23 (citing AR 548, 580)). However, Plaintiff makes no argument as to how the noted diagnoses in two discrete treatment notes meets the definition of "repeated manifestations of inflammatory arthritis" under the regulations such that his ankylosing spondylitis would meet or equal the first prong of listing 14.09D. Moreover, the "mere diagnosis of an impairment [in the listings] is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990); *see also Tackett*, 180 F.3d at 1100 (a generalized assertion of functional problems is not enough to establish disability at step three).

Finally, as argued by Defendant, Plaintiff "provides no evidence or argument that he had a marked limitation in any of the three areas of functioning described in 14.09D. As such, the issue of whether Plaintiff exhibited constitutional signs is inconsequential to the ultimate outcome of the decision because he has not shown that he met the additional requirements of listing 14.09D." (Doc. No. 18 at 3). As noted above, under the second prong of listing 14.09D, Plaintiff must show marked limitation in one of the following: activities of daily living, maintaining social functioning, and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D). "Marked limitation means that the signs and symptoms of your immune system disorder interfere seriously with your ability

to function. Although we do not require the use of such a scale, 'marked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." *Id*. at § 14.00(I)(5).

Elsewhere in the decision, and unchallenged by Plaintiff, the ALJ made specific findings that Plaintiff has only mild limitation in concentrating, persisting, and maintaining pace; mild limitation in interacting with others; and Plaintiff "reported no difficulty performing personal care," did household chores on a weekly basis, shopped in stores, and reported riding a bicycle for exercise during the relevant adjudicatory period. (AR 21, 23-24, 28, 358 (Plaintiff's mother reporting he gets along well with authority figures), 380, 384). Plaintiff fails to cite, nor does the Court discern, evidence showing he has marked limitations in any of the requisite functional areas under the regulations. *See Moreno v. Comm'r of Soc. Sec*., 2020 WL 6526246, at *23 (E.D. Cal. Nov. 5, 2020) ("the Court agrees with Defendant that the record did not show Plaintiff had 'marked' limitations in any pertinent area, and that the ALJ properly found Plaintiff had only 'mild' limitations of daily living, in maintaining social functioning, and in concentration, persistence, or pace.") (collecting cases); *Christopher S. v. Comm'r of Soc. Sec*., 2024 WL 4605464, at *4 (W.D. Wash. Oct. 29, 2024) ("Moreover, Plaintiff fails to provide any argument or evidence that his limitations rise to the 'marked' level required by Listing 14.09D. As a result, the ALJ did not err in finding that Plaintiff did not meet a listed impairment.").

For the foregoing reasons, Plaintiff has not met his burden in demonstrating ankylosing spondylitis, either singly or in combination with other claimed impairments, meets or equals listing 14.09. *See Burch*, 400 F.3d at 683. The Court finds no harmful error at step three.

**B.  Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only

10

show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 25). Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective testimony.[3] (Doc. No. 14 at 26-29). First, the ALJ found the objective evidence "partially substantiates the degree of severity alleged by" Plaintiff and further referenced "generally unremarkable physical

---

[3] Defendant argues the ALJ found that "all the medical opinions and PAMFs in the record contradicted Plaintiff's alleged limitations." (Doc. No. 18 at 15-16). It is reasonable for the ALJ reasonably to rely on the lack of any corroborating medical source statement to discount the severity of a claimant's subjective claims. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (contradiction with the relevant medical record was a sufficient basis for the ALJ to reject Plaintiff's subjective testimony); *Carmickle*, 533 F.3d at 1161; *see also Edna v. Saul*, 2020 WL 1853312, at *8 (S.D. Cal. Apr. 13, 2020) (lack of medical opinion finding Plaintiff disabled was a clear and convincing reason to reject Plaintiff's subjective allegations). However, the Court is not permitted to consider any lack of corroborating medical source statements because it was not specifically offered by the ALJ in the decision as reasons to discount Plaintiff's symptom claims. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

examinations except for intermittent lumbar, hip, and foot abnormalities." (AR 25). In his opening brief, Plaintiff notes only that lack of objective evidence in support of the severity of symptoms cannot be the sole basis for discounting testimony, without specifically challenging the ALJ's findings or identifying objective evidence in the record in support of this argument. (Doc. No. 14 at 25-26); *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Plaintiff is correct that an ALJ may not discredit a claimant's testimony and deny benefits *solely* because the degree of impairment alleged is not supported by objective medical evidence. (Doc. No. 15 at 13 (citing *Burch*, 400 F.3d at 681)). However, medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). Here, as discussed below, the ALJ gave additional reasons, supported by substantial evidence, for discounting Plaintiff's symptom claims. Moreover, the ALJ set out medical evidence documenting normal objective testing and unremarkable physical examinations across the relevant adjudicatory period in contradiction of Plaintiff's claims of disabling impairments. (AR 26-28, 447 (noting no evidence of active arthritis on exam, and recent labs show no inflammation), 451 (same), 551 (normal examination aside from bilateral pes planus that corrects with toe raise with heel inversion), 537-38 (normal examination aside from mild moderate pes planus valgus right foot, moderate pes planus valgus left foot, and 5/-5 foot inversion strength bilaterally), 627-29 (normal physical examination aside from reduced back forward flexion), 742 (unremarkable x-ray of right foot), 743 (unremarkable x-ray of left foot aside from "questionable flattening involving the arch of the foot), 743-44 (hip x-rays showing possible underlying femoral acetabular impingement bilaterally), 744-45 (unremarkable sacroiliac joint x-ray), 822 (normal examination except slight limitation with internal rotation of hips, uncomfortable Fabre test, and low arches with pronation of foot). The lack of corroboration of Plaintiff's claimed limitations by the objective evidence was a clear, convincing, and unchallenged reason for the ALJ to discount Plaintiff's symptom

1  claims.

2  Second, the ALJ found Plaintiff's symptom claims "are inconsistent with treatment notes demonstrating improved overall symptoms after stopping narcotic medication and marijuana use at the time of the alleged onset date, October 1, 2017. Treatment notes further demonstrate continued prescriptions for Xeljanz and cyclobenzaprine from October 2017 through July 2022, consistent with stable overall symptoms and supporting a [RFC] for work at the reduced light exertional level." (AR 25). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints). Plaintiff argues the ALJ failed to "recognize and discuss evidence contradicting his finding, as well as the progressive nature of [ankylosing spondylitis]" and, in support of this argument, generally cites a handful of "orthopedic workup[s]" in 2019 with new medication prescribed, and Plaintiff's reports in January 2020 and July 2021 that he was "very fatigued." (Doc. No. 14 at 27 (citing AR 540-52 (including note by treatment provider that Plaintiff was recently referred to a rheumatologist who stated he does not have the diagnosis of ankylosing spondylitis), 579, 582, 589, 593, 817)).

However, the ALJ set out medical evidence documenting improvement and increased physical activity across the relevant adjudicatory period in contradiction to Plaintiff's claims of disabling limitations, including Plaintiff's own consistent reports that he was doing well. (AR 25-28, 443 ("clinically doing well on current medical therapy with Xeljanz" and "no evidence of active arthritis), 447 (same), 451 (same and "underwent normal physical examination"), 536 (stating his lateral hindfoot pain improved and that he "has been very active cycling and exercises without any exacerbation of pain), 585 (reporting in 2021 that Xeljanz helps with pain and "he is happy with Xeljanz and does not wish to make changes), 586 (Plaintiff is "doing well," continue Xeljanz, labs are stable), 636 (requesting refill of cyclobenzaprine for myalgias and stating it works well for him), 716 (reporting his body pain and abdominal pain improved since stopping narcotic medication, and treating provider noting he is mobile and walking). Moreover, the ALJ

13

explicitly recognized evidence cited by Plaintiff including objective testing and ongoing reports of morning stiffness and back pain, and nonetheless found the severity of his symptom claims including an inability to walk, sit, or stand for more than 10-15 minutes at a time were not consistent with the documented improvement, including Plaintiff's own reports, across the treatment record. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. Thus, when viewing the record as a whole, this was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Third, the ALJ found Plaintiff did not follow up on treatment recommendations such as orthotics and physical therapy. (AR 28). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. In support of this finding, the ALJ cited Plaintiff's acknowledgement that he had not been fitted for orthotics, despite his treating provider's treatment recommendation. (AR 27, 536). Plaintiff argues he offered the requisite "reason" for failing to follow this prescribed course of treatment because treatment records in 2019 indicated that "he planned on" being fitted for orthotics; however, as noted by Defendant, Plaintiff's treating orthopedist stated at that time that he "should get the orthotics as previously prescribed," and the record indicates that treatment providers continued to prescribe orthotics in 2020 and 2021. (Doc. No. 18 at 10 (citing AR 539, 579, 582)). The ALJ also noted that Plaintiff's rheumatologist recommended physical therapy, but Plaintiff declined due to "minimal benefit in the past." (AR 26, 822 (noting Plaintiff "wishes to wait for now" on physical therapy). Personal preference is not a sufficient reason to not comply with treatment recommendations. *See, e.g., Molina*, 674 F.3d at 1113-14. Based on the foregoing, Plaintiff's failure to comply with treatment recommendations was a clear and

1 convincing reason, supported by substantial evidence, to discount his symptom claims. *See*
2 *Burch*, 400 F.3d at 679.

3       Fourth, the ALJ considered Plaintiff's daily activities in evaluating the limiting effects of
4 Plaintiff's symptom claims and noted that despite Plaintiff describing difficulty getting up in the
5 morning due to pain and stiffness, and difficulty staying in one position for too long, he had the
6 capacity for riding a bike as of October 2021. (AR 28, 536 ("very active cycling and exercises
7 without any exacerbation of pain"), 585 ("riding bicycle and keeping physically active")).
8 Admittedly, a claimant need not be utterly incapacitated to be eligible for benefits. *Fair v.*
9 *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn*, 495 F.3d at 639 ("the mere fact that a
10 plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to
11 her overall disability."). Nonetheless, where daily activities "suggest some difficulty functioning,
12 they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict
13 claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal citations
14 omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). Plaintiff argues the ALJ failed
15 to make findings "as to when [Plaintiff] rode his bike during the day, how often, or for how long.
16 Riding a bike to exercise and move his joints in the afternoon is not contrary to his testimony of
17 having hours of stiffness in the morning. Nor are infrequent bike rides or bike rides of short
18 durations inconsistent with a finding of disability." (Doc. No. 14 at 27-28).

19       However, regardless of evidence that could be viewed more favorably to Plaintiff, it was
20 reasonable for the ALJ to conclude that Plaintiff's reported ability to regularly ride a bicycle for a
21 large portion of the adjudicatory period (AR 69-70), was inconsistent with the severity of his
22 allegations of entirely disabling limitations including inability to stand, sit, or walk for more than
23 10 to 15 minutes. *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting
24 Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment);
25 *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from
26 evidence). Moreover, even assuming, arguendo, that this reason was not supported by substantial
27 evidence, any error is harmless because, as discussed in detail above, the ALJ offers additional
28 reasons to discount Plaintiff's symptom claims. *See Carmickle,* 533 F.3d at 1162-63 (error in

considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims and did not err at step three. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 18) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   April 23, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE